CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 0 6 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

JESSEE RAYMOND SMITH, JR.,  )
    **Petitioner,**  )
)    Civil Action No. 7:07CV00536
)
)
**v.**  )    **MEMORANDUM OPINION**
)
)
LORETTA KELLY, WARDEN OF  )
SUSSEX I STATE PRISON,  )
    **Respondent.**  )    By: Hon. James C. Turk
)    Senior United States District Judge

Jessee Raymond Smith, Jr., a Virginia Department of Corrections inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Respondent filed a motion to dismiss, pursuant to Rule 5 of the Rules Governing Section 2254 Cases, to which Smith filed a timely response, making the matter ripe for disposition. Upon careful review of the extensive state court records and the pleadings and exhibits submitted by the parties, the court concludes that respondent's motion to dismiss must be granted.

## I. Factual and Procedural Background

On March 5, 2004, Smith was indicted on two counts of rape and two counts of aggravated sexual battery. On June 23, 2004, the Commonwealth made a motion to Nolle Prossequi Counts Two and Four of the indictment, the aggravated sexual battery charges, which the court granted. The trial in the Circuit Court for Wise County proceeded the next day. The evidence concerning the first rape charge presented at Smith's trial indicated that on an unspecified date in April of 2003, Smith raped the victim, a sixteen year-old female who suffered from a mental disability, in a dilapidated building adjacent to an alley near her house. Smith was known to the victim as an acquaintance.

1

The victim described the location and noted that there was a chair in the building. The victim did not immediately inform any family members of the incident and no forensic evidence was gathered at that time.

The evidence concerning the second rape charge indicated that on April 13, 2003, Smith picked up the victim in his vehicle and transported her to a secluded location in the town of Appalachia, Virginia. After stopping his vehicle at this location, Smith partially removed the victim's clothing against her will and with the use of force and subsequently engaged in forcible sexual intercourse with her multiple times. Smith left the victim at the location of the rape and she proceeded to walk to a family member's home. The victim then told several family members about the incident and was subsequently taken to the hospital where a Physical Evidence Recovery Kit ("PERK") was administered. Dirt was found on her pants and upper thigh and it was noted that her perineal area was red, torn, and bleeding. Specimens were collected from her vaginal and upper thigh/external genitalia area. The specimens from the victim's upper thigh area later proved to be consistent with Smith's DNA.

At the conclusion of the jury trial on June 25, 2004, Smith was acquitted of the first rape charge and convicted of the second rape charge, in violation of Va. Code Ann. 18.2-61 (Circuit Court Case No. CR04-00121). By final order entered October 15, 2004, Smith was sentenced to a term of 20 years incarceration for the rape conviction.[1]

Smith's appeal to the Court of Appeals of Virginia was refused by a single judge of that

---

[1] The court notes that Smith was also sentenced on this day for many other criminal offenses, including forgery, uttering a forged check, grand larceny, perjury, felonious assault of a law enforcement officer, and obstruction of justice. Smith was sentenced to a total of 180 years and 12 months incarceration with 150 years and 12 months suspended. However, the only criminal offense that Smith challenges in the instant petition is the rape conviction with a sentence of 20 years incarceration.

Court on August 26, 2005. A demand for reconsideration by a three-judge panel was denied on November 1, 2005. On July 26, 2006, the Supreme Court of Virginia refused his petition for appeal. Smith's petition for rehearing was denied on September 20, 2006.

Smith then filed a habeas corpus petition in the Supreme Court of Virginia on October 13, 2006, raising various claims of ineffective assistance. On May 30, 2007, the Supreme Court of Virginia entered a detailed opinion addressing Smith's claims, <u>Jessee Smith v. Warden of the Sussex I State Prison</u>, No. 062059, slip op. (Va. May 30, 2007), and dismissed the petition. A petition for rehearing was denied on September 21, 2007. On November 5, 2007, Smith filed the instant § 2254 petition raising substantially the same claims that he raised in his state habeas petition.

## II. Current Claims

Smith raises the following claims in his § 2254 petition:

(1) Smith alleges that he was denied his Sixth Amendment right to effective assistance of counsel and his Fifth and Fourteenth Amendment rights to Due Process at his trial when:

> (a) counsel failed to object to the prosecutor stating during opening arguments that petitioner had been and was currently incarcerated;

> (b) the prosecutor improperly mentioned petitioner's criminal history six times to the jury;

> (c) counsel failed to object or move for a mistrial when the jury viewed evidence during their deliberations that was not presented at trial;

> (d) counsel failed to object to the admission into evidence of photographs taken the day prior to the trial;

3

(e) counsel failed to request or view any tangible objects in the possession of the Commonwealth prior to trial;

(f) counsel failed to object to the prosecution's inflammatory opening and closing statements;

(g) counsel failed to introduce video and cassette tape evidence allegedly containing exculpatory statements made by the victim;

(h) counsel failed to object to the victim's testimony at trial when the prosecutor admitted to rehearsing her testimony with her prior to trial;

(i) counsel failed to move for the admission of a certificate of analysis of the soil samples of the crime scene;

(j) counsel failed to call Dr. A.W. North as a witness at trial, who would have testified that the victim's injuries were consistent with consensual sex;

(k) counsel failed to move for a mistrial subsequent to the prosecution's "prejudicial" closing arguments; and

(l) counsel failed to state that she had a conflict of interest, and this conflict caused her to work in collusion with the police and the prosecutor.

(2) Smith next alleges that he was denied his Sixth Amendment right to effective assistance of counsel and his Fifth and Fourteenth Amendment rights to Due Process at sentencing when counsel failed to adequately investigate Smith's background, which might have contained mitigating evidence, and failed to call Dr. Whelan as an expert witness to provide this mitigating evidence.

(3) Smith finally alleges that he was denied his Sixth Amendment right to effective

4

assistance of counsel on appeal when counsel merely filed a petition pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967).

### III. Analysis

Respondent admits that Smith properly exhausted his state court remedies as to his claims. Therefore, this court must address these claims under the standards set forth in 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). Section 2254(d) as amended by the AEDPA reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Applying the interpretation of this standard of review set forth by the Supreme Court of the United States in <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000), a state court adjudication is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." <u>See also Lovitt v. True</u>, 403 F.3d 171 (4th Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 400 (2005); <u>Bell v. Jarvis</u>, 236 F.3d 149, 157 (4th Cir. 2000) (en banc).

A state court decision unreasonably applies clearly established federal law if the state court, despite correctly identifying the governing legal principle, "unreasonably applies that principle to

5

the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. The <u>Williams</u> Court stressed that Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." <u>Id.</u> at 411. Thus, under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court's decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable. <u>Id.</u>; <u>Booth-El v. Nuth</u>, 288 F.3d 571, 576 (4th Cir. 2002); <u>see also McLee v. Angelone</u>, 967 F. Supp. 152, 156 (E.D. Va. 1997) (holding that the focus of federal court review is the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves).

In addition, a state court determination of a factual issue is "presumed to be correct" and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Tucker v. Osmint</u>, 350 F.3d 433, 439 (4th Cir. 2003). When reviewing the sufficiency of the evidence on a federal habeas petition, "the critical inquiry . . . must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979). The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <em>any</em> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319 (emphasis in original). In determining whether the Supreme Court of Virginia reasonably applied these principles, this court must determine whether the decision is minimally consistent with the record. <u>Bell v. Jarvis</u>, 236 F.3d 149, 159 (4th Cir. 2000).

To prevail on an ineffective assistance of counsel claim, a habeas corpus petitioner must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First,

a petitioner must show "that counsel's performance was deficient," meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, a petitioner must show "that the deficient performance prejudiced the defense" to the extent that he was deprived of a fair trial. Id. The prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Strickland establishes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. If it is clear that if petitioner has not satisfied one prong of this Strickland test, the court need not inquire whether he has satisfied the other prong. Id. at 697.

**(1) Trial Court Claims:**

**a. Prosecutor's Improper Opening Arguments**

Smith first alleges that he was denied his Sixth Amendment right to effective assistance of counsel at his trial when trial counsel failed to object to the prosecutor stating during opening arguments that petitioner had been and was currently incarcerated. Smith provides the court with a copy of a letter from trial counsel agreeing that the prosecutor's comments were improper but noting that, because she failed to object to the comments at trial, the issue was barred on appeal. Smith contends that the prosecutor's statement "poison[ed] the minds of the jury" and that counsel was ineffective in that she failed to object to the statement, ask the court for a curative jury instruction, or move for a mistrial. (Pet. at 7.)

The Virginia Supreme Court, upon consideration of the habeas petition, specifically addressed this claim noting:

7

The record, including the trial and sentencing transcripts, demonstrates that the Commonwealth made the comments to inform the jury of the victim's expected testimony concerning her fear of petitioner. The trial court instructed the jury that opening statements were not evidence. As such petitioner has failed to demonstrate that the comment was inadmissible. Furthermore, the evidence established that the victim and petitioner had sexual intercourse and that "everything" about him made her afraid of him. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Slip op. at 2.)

This court agrees with the state habeas court and finds that this claim fails under both prongs of Strickland. The court notes that a review of the record reveals that the only mention of Smith's past or current incarceration during opening arguments occurred when the prosecutor stated, "[the victim] says that Jessee's mean, and that she'd been told that he was mean, and that she was very afraid of him. And that she'd also been told that he'd been in prison." (Transcript of Day Two of Jury Trial at 10-11, Smith, F04-121.) The court first notes that counsel was not ineffective in making a strategic decision not to object to the prosecutor's remark. Counsel's objection might have heightened any potential prejudice attendant to the prosecution's remark by drawing the jury's attention thereto. See Evans v. Thompson, 881 F.2d 117, 125 (4th Cir. 1989) (decision not to object is a tactical decision). Thus, Smith fails to prove that counsel's performance was deficient.

Moreover, the record reveals that the trial court clearly indicated that counsel's statements in opening arguments should not be considered as evidence. The court informed the jury that, "[t]he opening statements and closing arguments of the attorneys are intended to help you in understanding the evidence and applying the law, but their statements are not evidence." (Transcript of Day One of Jury Trial at 236-237, Smith, F04-121.) Smith's counsel also noted that the opening statements

8

"are not evidence in this case." (Transcript of Day Two of Jury Trial at 19, <u>Smith</u>, F04-121.) Accordingly, this court cannot find that Smith was prejudiced by the statement itself or by counsel's failure to object. <u>See</u> <u>Washington v. United States</u>, 291 F. Supp. 2d 418, 438 (W.D. Va. 2003) (defendant was not prejudiced by counsel's failure to object to prosecutor's comments during opening statement, and thereby, to preserve potential prosecutorial misconduct issue for appeal, as required to support a claim of ineffective assistance; prosecutor's comments were factual statements of procedural posture of case or permissible characterizations of anticipated witness testimony, and court instructed jury that attorneys' statements were not evidence).

Finally, in light of the Commonwealth's other strong evidence supporting the charge of rape, the court finds no reasonable probability that defense counsel's objection to the prosecutor's statement or a curative jury instruction would have persuaded jurors to acquit Smith. Similarly, the court finds it highly unlikely that the trial court would have granted defense counsel's motion for a mistrial. Accordingly, the Supreme Court of Virginia's disposition of this claim was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of facts. Therefore, the court will grant the motion to dismiss as to this claim.

## b. Prosecutor's Improper Statements

Smith next claims that his Fifth and Fourteenth Amendment rights to Due Process were violated when the prosecutor improperly mentioned petitioner's criminal history "on six different occasions" during the cross-examination of Dr. Joseph Whelan. (Pet. at 9.) Smith alleges that the court sustained counsel's objection to these questions but failed to inform the jury to disregard the questions. Smith complains that his character or credibility was never at issue and the prosecutor's

comments prejudiced him by prompting the jury to consider him untrustworthy.

The Supreme Court of Virginia, upon consideration of the habeas petition, determined:

> The record, including the petition for a writ of habeas corpus and the trial transcripts, demonstrates that counsel successfully objected when the prosecutor attempted to question Dr. Whalen concerning petitioner's criminal record. When the prosecutor mentioned that there was no evidence as to whether Dr. Whalen had considered petitioner's criminal record in reaching the conclusion that petitioner was truthful, counsel objected and her objection was overruled as the trial court found the prosecutor was not commenting directly on petitioner's criminal record. Petitioner has not proffered any additional actions he contends counsel should have taken. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Slip op. at 3.)

The court notes that Smith does not appear to raise an ineffective assistance of counsel claim in his federal habeas petition. Regardless, such a claim would lack merit as it is clear that the Supreme Court of Virginia thoroughly and properly analyzed Smith's complaint pursuant to Strickland. The court cannot find that the Supreme Court of Virginia's disposition of this claim was contrary to, or an unreasonable application of, federal law or was based on an unreasonable determination of facts. Thus, that court's determination that Smith's ineffective assistance of counsel claim is without merit is entitled to deference.

Moreover, any potential Due Process claim is similarly without merit. The court has reviewed the entire trial transcript and record in this case and notes that, even if the prosecutor's questions posed to Dr. Whalen and his comments made during closing arguments were inappropriate, they did not displace the presumption of innocence as they cannot be characterized as crucial, critical, or highly significant factors in the jury's determination of guilt. See Brecht v.

10

Abrahamson, 507 U.S. 619, 637 (1993) (holding that a habeas petitioner is not entitled to relief unless evidence of his prior crimes "had a substantial and injurious effect or influence in determining the jury's verdict."). The prosecutor's questions referencing petitioner's potential criminal history were vague and hypothetical. The prosecutor was merely questioning the credibility of Dr. Whalen, a defense witness, who testified as to Smith's veracity. The prosecutor was not arguing that Smith had a criminal record, merely that Dr. Whalen did not even attempt to discern whether or not Smith had a criminal record prior to his determination that Smith was telling the truth in his statements. Thus, the evidence suggesting that Smith had a prior criminal record was minimal in the scope of the trial. Defense counsel even noted during arguments concerning the jury instructions: "I'm not sure exactly how much by inference or whatever has been presented to the Jury. I don't think there's been very much in the way of direct testimony as to his criminal history." (Transcript of Day Three of Jury Trial at 143, Smith, F04-121.) Thus, the court finds that the prosecutor's questions and comments did not have a substantial and injurious effect or influence in determining the jury's verdict, and that Smith fails to meet his burden of showing that he was denied a fair trial because of the prosecutor's statements. Therefore, the court will grant the motion to dismiss as to this claim.

**c. Improper Evidence Presented to the Jury**

Smith further claims that counsel provided ineffective assistance by failing to object or move for a mistrial when the jury viewed evidence during their deliberations that was not presented at trial. Specifically, the jury requested to view items from the rape kit used subsequent to the victim's arrival at the Emergency Room. Smith complains that the kit was sealed during the trial and that the contents were never actually presented in the courtroom. Smith also contends that this violated his Due Process rights.

11

The Virginia Supreme Court, upon consideration of the habeas petition, held:

> [C]laim (A)(c) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that the "box" contained the PERK kit, which was admitted into evidence, and two witnesses had testified about the contents of the kit. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Slip op. at 4.)

This court agrees with the determination of the state court as the PERK was certainly properly presented at trial. The record is clear that the kit was administered to the victim subsequent to her arrival at the Emergency Room on April 13, 2003. The kit was introduced by the prosecutor through Kristy Ruryk, one of the emergency room nurses who treated the victim. Ruryk explained the procedures used during the administration of a PERK and testified that she personally sealed the relevant items in the kit and wrote the information on the outside of the kit. Ruryk further testified that she ultimately turned the kit over to Officer Bowman of the Appalachia Police Department. Bowman testified that he received the kit from Nurse Ruryk and that he secured it in the "PD cooler" until he took it to the lab for "DNA analysis." (Transcript of Day Two of Jury Trial at 178, Smith, F04-121.) Nicole Harold, a Virginia Division of Forensic Science analyst, testified that she received and opened the kit and then tested various items from the kit. Harold further testified as to the items that she tested and the results that she received from those tests. She identified spermatozoa, or male reproductive cell, on the swabs from the victim's vaginal and thigh/external genitalia areas and ultimately determined that the DNA profile from the latter swab was consistent with the DNA profile of Jessee Smith. Harold was unable to make any type of conclusion as to the former swab.

12

Thus, as the kit was admitted into evidence and two witnesses testified as to the contents of the kit, defense counsel was not deficient in failing to object or move for a mistrial when the jury viewed items from the kit during deliberations. See Clanton v. Bair, 826 F.2d 1354, 1359 (4th Cir. 1987) (finding that counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis"). Furthermore, even if the jury had not physically viewed the kit, there was more than enough evidence presented at trial, including testimony describing the contents and results of the kit, to convict Smith. Consequently, Smith cannot prove that the result of the proceeding would have been different had the kit been excluded from the jury room. Finally, Smith provides no support for his claim that the kit was inadmissible because the contents were never physically presented in the courtroom or that the viewing of the kit violated his Due Process rights. Accordingly, the Supreme Court of Virginia's disposition of this claim was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of facts. Therefore, the court will grant the motion to dismiss as to this claim.

**d. Inadmissible Photographs**

Smith next alleges that counsel was ineffective in failing to object to the admission into evidence of four photographs taken the day prior to the trial. Smith claims that the photographs were admitted without a proper foundation being laid prior to their admission because the pictures were not included in the discovery that counsel requested on June 9, 2004, prior to trial. Accordingly, Smith contends that counsel was prohibited from investigating the alleged crime scene. Smith further contends that the admission of the photographs denied him a fair trial and violated his due process rights.

13

The court first notes that this claim was not presented to the state habeas court. Regardless, the claim is without merit. According to Officer Bowman's testimony, the only photographs that were taken the day before trial were the photographs marked as Exhibits Seven, Eight, Nine, and Eleven. Exhibits Seven, Eight, Nine, and Eleven are photographs of the first alleged rape scene. Smith was acquitted of the first rape charge, thus, this court fails to comprehend how counsel was ineffective in failing to object to their admission or how the result of the proceeding would have been different absent their admission. The photographs of which Smith complains are in no way related or relevant to the second rape incident for which Smith was convicted. Accordingly, the court finds that counsel was not ineffective in failing to raise an objection for which there was no obvious basis. See Clanton, 826 F.2d at 1359. Therefore, the court will grant the motion to dismiss as to this claim.[2]

### e. Discovery Claim

Smith also claims that counsel was ineffective in failing to request or view any tangible objects in the possession of the Commonwealth prior to trial. Smith contends that these unidentified

---

[2] In his state habeas petition, Smith challenged only the photographs of a McDonald's cup. However, as Smith does not object to these photographs in his federal petition, the court need not address the issue here. Regardless, such a claim would lack merit. Officer Bowman testified at trial that the victim informed him that, subsequent to the rape, Smith used a blue washcloth to clean himself and that he threw the cloth and a McDonald's cup out of the Jeep at the scene. Bowman testified that a blue washcloth and a McDonald's cup were recovered at the alleged scene of the rape on April 14, 2003, the day after the rape. The pictures of the cloth and the McDonald's cup were taken on that same date. The Supreme Court of Virginia considered this claim and determined that the record "demonstrates that most of the photographs were properly admitted into evidence after petitioner had seen them and counsel indicated there was no objection. Thereafter, counsel successfully objected when the prosecutor attempted to introduce the picture of [the McDonald's] cup into evidence. Counsel thereafter moved to introduce the picture to demonstrate that the cup size was different and counsel argued during closing argument that the photograph revealed evidence that was inconsistent with petitioner's guilt. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." (Slip op. at 3.) The court cannot find that the Supreme Court of Virginia's disposition of Smith's claim concerning photographs of the McDonald's cup was contrary to, or an unreasonable application of, federal law or was based on an unreasonable determination of facts.

"tangible objects" could be "used for exculpatory evidence or for impeachment purposes." (Pet. at 18.) Smith contends that counsel consequently could not prepare an adequate defense and further complains that counsel did not review any of the other discovery evidence prior to trial.

The Supreme Court of Virginia, upon consideration of the habeas petition, noted that "[o]ther than the photographs, which petitioner and counsel saw prior to their introduction at trial, petitioner fails to identify any 'tangible objects' that counsel should have requested and/or inspected, but did not." (Slip op. at 4.) That court further noted that defense counsel "filed a proper pre-trial discovery motion requesting to view or inspect 'tangible objects' as allowed by Rule 3A:11." (Slip op. at 3.) Thus, the court reasoned that Smith failed to demonstrate that counsel's performance was deficient or that the result of the proceeding would have been different.

This court agrees with the Supreme Court of Virginia's determination. On April 23, 2004, the trial court signed an order presented by defense counsel requesting that the Commonwealth provide the defense with, among many other things, "books, papers, documents, or tangible objects that are within the possession, custody or control of the Commonwealth." (Pet., Ex. C8-11.) Thus, Smith's contention that counsel failed to request any "tangible objects" is clearly not supported by the record. Furthermore, Smith fails to allege exactly what objects or other discovery counsel failed to review and what exculpatory or impeachment evidence the discovery would have provided. Thus, Smith fails to even allege, must less prove, that the result of his trial would have been different. Accordingly, the Supreme Court of Virginia's disposition of this claim was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of facts. Therefore, the court will grant the motion to dismiss as to this claim.

15

## f. Inflammatory Opening and Closing Arguments

Smith alleges that counsel was ineffective in failing to object to the prosecution's inflammatory opening and closing arguments and other statements throughout the trial. Specifically, Smith alleges that the prosecutor requested that the jury return a verdict of guilty because Smith allegedly raped six to eight year old girls. Smith further contends that he was denied Due Process as these statements were improper and misled the jury.

The Supreme Court of Virginia, upon consideration of the habeas petition, stated:

> The record, including the trial transcript, demonstrates that the court advised the jury that opening statement and closing arguments are not evidence. Furthermore, the record demonstrates that the prosecutor was referring to the victim's mental age in light of her mental retardation, a fact supported by evidence elicited at trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Slip op. at 5.)

The court cannot find that the Supreme Court of Virginia's disposition of this claim was contrary to, or an unreasonable application of, federal law or was based on an unreasonable determination of facts. As previously noted, the trial court informed the jury that, "[t]he opening statements and closing arguments of the attorneys are intended to help you in understanding the evidence and applying the law, but their statements are not evidence." (Transcript of Day One of Jury Trial at 236-237, Smith, F04-121.) Moreover, Smith's recollection of the prosecutor's statements is inaccurate. The prosecutor stated that the evidence would reveal that the victim was a sixteen year old girl at the time of the encounter, but that testing revealed that she was mentally disabled and functioned as if she were only six, seven, or eight years old. The prosecutor's

16

statements were supported by the record as several witnesses, including a school psychologist and Jessica's teacher, testified as to Jessica's mental capabilities. Accordingly, counsel was not ineffective in failing to object to the prosecutor's opening and closing arguments and the jury was not misled because the prosecutor's statements were clearly supported by the evidence presented at trial. Therefore, the court will grant the motion to dismiss as to this claim.

## g. Exculpatory Tapes

Smith alleges that counsel was ineffective in failing to introduce potentially exculpatory evidence at trial. Smith alleges that in a July 23, 2003 video-taped interview with a private investigator, the victim stated that Officer Harold Lester Bowman prompted her to lie about the rape. The victim further allegedly stated that Smith did not rape her and that she was in love with Smith. Smith also contends that, subsequent to his sentencing, a cassette tape recording was made during a telephone call conversation between the victim and Smith. Smith alleges that during that conversation the victim stated numerous times that she loved Smith and that Officer Bowman told her to lie about the rape. Smith states that counsel was similarly ineffective in failing to file an unspecified motion to provide this subsequent evidence to the court.

The Virginia Supreme Court, upon consideration of the habeas petition, determined:

The record, including the trial transcripts, demonstrates that the private investigator appointed to assist the defense testified concerning her conversation with the victim wherein the victim indicated that she had agreed to the sexual intercourse. Counsel indicated to the court that she would review the tape and introduce it if necessary and a letter from counsel to petitioner demonstrates that counsel made a tactical decision not to introduce the tape because she believed it to be harmful. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

17

(Slip op. at 6.)

The court agrees with the Virginia Supreme Court's determination concerning the July 23, 2003 video-taped interview. A private investigator hired by the defense, Loretta Mullins, testified as to the substance of the video tape. There was some issue at trial as to whether Mullins had received the proper permission from the victim's mother, had coached the victim prior to turning on the tape recording[3], and had asked leading and manipulative questions during the interview. Accordingly, counsel was not unreasonable in considering the fact that showing the video tape to the jury might harm Smith's defense and was, therefore, not ineffective in making the tactical decision not to introduce the tape. See Strickland, 466 U.S. at 689 (finding that actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance).

The court also finds without merit Smith's contention that counsel was ineffective in failing to file a motion concerning the cassette tape recording made after sentencing. The court presumes that Smith is referring to a motion for a new trial based on the recantation of a witness. When a witness recants testimony given at trial, a new trial should be granted only when: (1) the court is reasonably satisfied that the testimony given by a material witness is false; (2) without the evidence a jury might have reached a different conclusion; and (3) the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial. United States v. Wallace, 528 F.2d 863, 866 (4th Cir. 1976). The failure to meet any one of the Wallace test's three prongs is fatal. United States v. Carmichael, 726 F.2d 158, 159 (4th Cir. 1984). Post-trial recantations of testimony are "looked upon with the utmost

---

[3] The video tape recording lasted only a few minutes; however, the victim's teacher testified that the victim was gone from her classroom for approximately forty-five minutes.

18

suspicion." <u>United States v. Johnson</u>, 487 F.2d 1278, 1279 (4th Cir. 1973) (citations omitted). Based on the other overwhelming evidence presented at trial, this court cannot find that the jury would have reached a different conclusion had the cassette tape been presented at trial. This determination is further supported by the fact that the jury heard similar impeachment evidence concerning the victim from Mullins and they chose not to give the evidence sufficient weight. Similarly, the court cannot find that Smith was taken by surprise by the victim's testimony at trial. Thus, as Smith fails to meet two of the <u>Wallace</u> test prongs, counsel was not ineffective in failing to make a motion for which there was no obvious basis. <u>See</u> <u>Clanton</u>, 826 F.2d at 1359.

Accordingly, the Supreme Court of Virginia's disposition of Smith's claims concerning the video and cassette tape evidence was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of facts. Therefore, the court will grant the motion to dismiss as to this claim.

## h. The Victim's Testimony

Smith next alleges that counsel was ineffective in failing to object to the victim's testimony when the prosecutor admitted to rehearsing her testimony with her prior to trial.[4] Smith contends that this coached testimony was improper and that the prosecutor failed to provide the defense with any transcripts or notes of the rehearsal sessions.

The court first notes that a review of the record reveals that this claim was not presented to the state habeas court nor was this claim considered by that court. Moreover, the government

---

[4] The trial transcript reveals that the prosecutor asked the victim, "You and I came the other day, didn't we . . . [a]nd you got to sort of practice getting up on, there, and I got to ask you questions." (Transcript of Day Two of Jury Trial at 120, <u>Smith</u>, F04-121.)

inexplicably fails to address this claim in their brief. Regardless, it is not unusual or improper for witnesses to rehearse their direct testimony with counsel. See Daewoo Engineering and Const. Co., Ltd. v. United States, 73 Fed. Cl. 547, 573 (Fed. Cl. 2006); see also Bennett L. Gershman, Witness Coaching by Prosecutors, 23 Cardozo L. Rev. 829, 830 (2001-2002) (noting that a distinction should be made between preparing a witness's testimony, which is generally considered acceptable, and attempting to improperly influence, or "coach" testimony). Rehearsing was especially appropriate in this situation where the witness was young, a rape victim, and mentally disabled. It does not defy reason to conclude that she would be fearful in a courtroom setting and that cautious counsel would want to make certain that she was comfortable with her surroundings prior to trial. Further, Smith provides no factual support for his conclusory allegation that the prosecutor improperly influenced the victim's testimony. It appears from the brief mention of the incident in the trial transcripts that, during the pre-trial preparation, the prosecutor merely posed the questions to be asked at trial and Smith provides the court with no evidence to the contrary. The court once again notes that counsel was not ineffective in failing to raise an objection for which there was no obvious basis. See Clanton, 826 F.2d at 1359. Thus, this claim must be dismissed.

**i. Certificate of Analysis**

Smith alleges that counsel was ineffective in failing to move for the admission of a certificate of analysis of the soil samples of the crime scene and in failing to call Jody B. Webb, an F.B.I. analyst, as a witness. Smith contends that the certificate of analysis would have revealed that the soil tested at the crime scene was different from the soil found on the victim's upper thigh and clothing and that this "exculpatory forensic evidence" would have changed the jury's verdict. (Pet. at 24.)

20

The Supreme Court of Virginia, upon consideration of the habeas petition, noted:

> The petitioner submits, as an exhibit, a copy of the certificate, which demonstrates that soil from the victim's pants did not match soil found at the crime scene. The record, including the trial transcript, demonstrates that the certificate was not filed with the court and that, therefore, counsel could not elicit testimony from Officer Lester Bowman as to the results of the analysis. Officer Bowman, however, testified that the pants were sent for analysis because the victim had indicated the mud on them came from petitioner's Jeep. The certificate of analysis was not submitted to the court because the Jeep was no longer available and thus, no soil sample from the Jeep could be submitted for comparison. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Slip op. at 7.)

The court agrees with the Supreme Court of Virginia's determination. There was no need for defense counsel to submit the certificate of analysis to the court because the original purpose of the test was not to prove that the soil from the scene of the rape matched the mud found on Jessica's pants, but to prove that the soil from the Jeep matched the mud found on Jessica's pants, thus corroborating Jessica's story that the mud on her pants came from inside the Jeep. As the Jeep was ultimately not available, the comparison test was not performed. The court can conceive of no rational basis for the defense to attempt to prove that the mud from the victim's pants did not match the soil from the crime scene as no such allegation was ever made by the prosecution. Thus, counsel was not ineffective for failing to raise a frivolous argument. The court further notes that Smith also fails to prove the prejudice prong of <u>Strickland</u> as the jury's verdict was clearly supported by DNA evidence and the testimonial evidence of the victim. Thus, even if this court finds that counsel was ineffective in failing to submit the certificate to the court or call the FBI analyst as a witness, in light of the more than overwhelming evidence, the result of the trial would not have been different.

21

Accordingly, the Supreme Court of Virginia's disposition of Smith's claims concerning the soil certificate of analysis was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of facts. Therefore, the court will grant the motion to dismiss as to this claim.

**j. Dr. North's Testimony**

Smith alleges that defense counsel was ineffective in failing to call Dr. A.W. North as a witness at trial. Smith contends that Dr. North would have testified that the victim's injuries were consistent with consensual sex and that this testimony would have persuaded the jury to find him not guilty. Smith bases this claim on a June 17, 2004 letter that counsel sent to the prosecution informing him of her intent to call Dr. North as a witness at trial.

The Virginia Supreme Court, upon consideration of the habeas petition, stated:

> The record, including the trial transcript, demonstrates that counsel presented ample evidence in support of petitioner's defense of consensual sex. Moreover, petitioner has failed to provide an affidavit from Dr. North to demonstrate that he would have testified as petitioner describes. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Slip op. at 9.)

This court agrees that Smith's claim has no merit. Defense counsel presented several witnesses to support Smith's defense of consensual sex. Dr. Whelan testified that he was of the opinion that the victim had the ability to understand the nature of and the capacity to consent to sexual intercourse. He further testified that, in his opinion, Smith was being honest as to his version of events concerning the incident. Shauna Boring, the girlfriend of Smith's uncle, testified that she

22

had observed the victim act "flirty" when she was in the same vicinity as Smith. (Transcript of Day Two of Jury Trial at 313, Smith, F04-121.) She further testified that she had observed the victim attempting to watch Smith take a shower. Private Investigator Loretta Mullins testified that, while the victim admitted that she and Smith had engaged in sex, the victim informed Mullins that Smith did not commit rape. Mullins further testified that the victim informed her that she was not scared of Smith and that she loved him. Janet Floyd, an acquaintance, testified that she had observed the victim at Smith's home. She claimed that the victim would stay for longer time periods of time when Smith was at home and that she had observed only normal communications between the victim and Smith. Marty Bush, Smith's uncle, testified that he had observed the same type of interactions between the victim and Smith. Finally, Nurse Ruryk conceded on cross-examination that it would be possible to obtain a tear below the vaginal opening from consensual sex. Accordingly, any testimony from Dr. North would have merely been cumulative.

Moreover, Fourth Circuit law provides that the choice of witnesses is a tactical decision to be made by trial counsel. Bunch v. Thompson, 949 F.2d 1354, 1364 (4th Cir. 1991); Strickland, 466 U.S. at 689 (limiting ineffective assistance claims to situations where the counsel's decision was not part of his trial strategy). Thus, the court cannot find that counsel was ineffective in failing to call Dr. North as witness at trial. Furthermore, the court finds that Smith fails to carry his burden of proving that the result of the trial would have been different. The jury heard all of the evidence, including the potentially exculpatory evidence produced by the defense, and apparently determined that the Commonwealth's evidence was more convincing. The court finds no reasonable likelihood that Dr. North's testimony that the victim's injuries were consistent with consensual sex would have persuaded the jury to find him not guilty. That evidence had already been presented to the jury

23

through Nuse Ruryk and the jury simply chose not to credit Smith's theory.

Accordingly, the Supreme Court of Virginia's disposition of Smith's claims concerning Dr. North's potential testimony was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of facts. Therefore, the court will grant the motion to dismiss as to this claim.

## k. Prejudicial Closing Arguments

Smith further alleges that counsel was ineffective in failing to move for a mistrial subsequent to the prosecution's "prejudicial" closing arguments. (Pet. at 29.) Smith also alleges that his Due Process rights were violated by the prosecutor's statements. Specifically, Smith complains that the prosecutor stated, "The defendant treated the alleged victim like a piece of trash . . . that's how he viewed the alleged victim." (Pet. at 28.) Smith also complains that the prosecutor provided his personal opinions regarding the credibility of the witnesses. Finally, Smith alleges that the prosecutor's statement that Smith's "sperm was all over the alleged victim" was improper as it was not corroborated by any evidence presented at trial. (Pet. at 29.)

The Supreme Court of Virginia, upon consideration of the habeas petition, determined:

The record, including the trial transcript, demonstrates that the trial court instructed the jury that closing arguments were not evidence. Furthermore, the Commonwealth commented on the evidence concerning witness credibility in his closing argument. Petitioner fails to establish that the comments were objectionable and that had counsel made objections or moved for a mistrial, the objections or motion would have been successful. Thus, petitioner has failed to demonstrated that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

. . . .

The record, including the trial transcript, demonstrates that petitioner's DNA was found on the victim's thighs and external genitalia and that while sperm was found

24

inside the victim's vagina the sample was not large enough to produce a match. Petitioner fails to identify with particularity any other statements that counsel should have objected to, and he fails to articulate how the statements constituted a misstatement of the evidence. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Slip op. at 7-8.)

The court agrees with the Supreme Court of Virginia's determination of this claim. In order for a defendant's Due Process rights to be violated by a prosecutor's closing argument, the prosecutor's remarks must (1) be improper and (2) "so prejudice[ ] the defendant's substantial rights that the defendant [is] denied a fair trial." United States v. Morsley, 64 F.3d 907, 913 (4th Cir. 1995). Some factors relevant to a prejudice determination are: (1) the degree to which the prosecutor's comments may mislead the jury; (2) whether the remarks were isolated or extensive; (3) the strength of the proof of guilt, absent the remarks; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by defense counsel's misconduct; and (6) whether curative instructions were given to the jury. United States v. Sheetz, 293 F.3d 175, 185-86 (4th Cir. 2002). Arguments typically deemed improper involve situations in which a prosecutor "express[es] his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant," "intentionally [ ] misstate[s] the evidence or mislead[s] the jury as to the inferences it may draw," or makes an argument "calculated to appeal to the prejudices of the jury." ABA Standards for Criminal Justice 3-5.8 (3d ed. 1993) (second edition cited with approval by the Supreme Court of the United States in United States v. Young, 470 U.S. 1, 8 (1985)).

Although "[t]he line separating acceptable from improper advocacy is not easily drawn," it

25

is clear that the prosecutor's arguments in this case were within acceptable bounds. Young, 470 U.S. at 7. The court first notes that Smith's complaint concerning the prosecutor's statement that Smith treated the victim like a piece of trash does not rise to the level of a Due Process violation. Assuming arguendo that the statement was improper, the remark was isolated and did not mislead the jury, the evidence was overwhelmingly in support of a conviction of guilty, and it does not appear that the statement was made to divert the jury's attention. Accordingly, this court cannot find that the statement so prejudiced Smith that he was denied a fair trial.

Furthermore, Smith's complaint that the prosecutor provided his personal opinions regarding the credibility of the witnesses also does not rise to the level of a constitutional violation. The transcript of closing arguments reveals that the prosecutor merely commented on the dearth of evidence that Dr. Whelan considered when making his determinations that Smith was a truthful person and pointed out the discrepancy in testimony between Shauna Boring and Captain Gerald Cox. Boring admitted at trial that she signed a statement presented to her by Cox, but testified that she never read the statement. This statement, admitted as Commonwealth's Exhibit Twenty-Three, indicated that Boring had observed Smith act in a sexually suggestive manner to the victim and that Smith had threatened Boring subsequent to his incarceration. At trial, Boring denied ever observing such conduct. Cox testified that he observed Boring look over the statement for several minutes and then sign it. Therefore, the challenged arguments were not improper. However, even if the prosecutor's statements were improper, Smith did not suffer any prejudice as a result. The Supreme Court of Virginia found that the trial court made it clear to the jury that the closing arguments were not evidence and, thus, any risk of undue prejudice was minimized. Thus, the prosecutor's comments did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial

26

of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).

Finally, Smith's claim that the prosecutor misstated evidence to the jury does not rise to the level of a constitutional violation. The prosecutor's statement to the jury concerning Smith's sperm found on the victim was not only proper, but clearly supported by the evidence presented at trial. The evidence at trial indicated that samples were taken from the victim's vagina and upper thigh area. Even though it was determined that sperm was present in the sample from the victim's vagina, the analyst was unable to procure any DNA evidence from the sample. However, DNA evidence linked to Smith was found in the latter sample. Even defense counsel admitted that "Ms. Carroll's testimony indicated that they could not find his DNA in her vagina, that the vaginal surface swab didn't show, [but] that his DNA was found externally on the thighs and external genitalia." (Transcript of Day Three of Jury Trial at 176-77, Smith, F04-121.) Thus, the prosecutor's statements were not improper as he did not misstate the evidence to the jury. Therefore, Smith's Due Process rights were not violated.

As no Due Process violations occurred during the prosecutor's closing argument, Smith's ineffective assistance of counsel claim relating to the closing argument must fail. See Clanton, 826 F.2d at 1359. Accordingly, the Supreme Court of Virginia's disposition of Smith's claims was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of facts. Therefore, the court will grant the motion to dismiss as to these claims.

## l. Conflict of Interest

Smith finally claims that counsel was ineffective in that she failed to reveal that she had a conflict of interest, and this conflict caused her to work in collusion with the police and the

prosecutor prior to and during trial. Specifically, Smith claims that on July 23, 2003, counsel interviewed the victim. Subsequent to this interview, Officer Bowman filed a complaint with the Virginia Bar Association stating that counsel had interviewed the victim without the consent of her parents. Smith complains that there was a possibility of criminal charges for the interview. Smith alleges that this created a conflict of interest for his counsel and that this was a "substantial disadvantage to the course of his defense." (Pet. at 30.)

> The Supreme Court of Virginia, upon consideration of the habeas petition, determined:
>
> > The record, including the trial transcript, demonstrates that a bar complaint was made. There is no evidence that the complaint was withdrawn. Petitioner fails to explain how any actions or omissions of counsel were a direct result of the complaint. Therefore, petitioner has failed to establish that an actual conflict of interest existed and fails to explain how the alleged conflict adversely affected counsel's performance. See Mickens v. Taylor, 535 U.S. 162, 172 (2002). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Slip op. at 9.)

The court agrees that Smith fails to provide any evidence that the bar complaint made against defense counsel by Officer Bowman created a conflict of interest or adversely affected counsel's performance. The record reflects that counsel zealously represented Smith prior to and during the three-day jury trial and Smith provides no evidence to support his contention that counsel's alleged conflict of interest "substantial[ly] disadvantage[d]" his defense. Conclusory allegations that counsel was working in "collusion" with the prosecution to convict Smith are insufficient. See United States v. Contractor, 926 F.2d 128, 134 (2d Cir. 1991) (finding that defendant failed to establish that his counsel was operating under a conflict of interest, and that as result he was denied effective

28

assistance of counsel, where defendant filed a complaint with the bar association against counsel and provided the court with only general allegations concerning counsel's ineffective assistance, no details about the alleged conflict, and no evidence concerning how the alleged conflict adversely affected counsel's performance). Moreover, there is no evidence that the bar complaint was withdrawn subsequent to Smith's conviction. Thus, the court cannot find that the bar complaint negatively impacted trial counsel's representation and, therefore, cannot find that counsel provided ineffective assistance. Accordingly, the Supreme Court of Virginia's disposition of this claim was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of facts. Therefore, the court will grant the motion to dismiss as to this claim.

**(2) Sentencing Claim: Failure to Investigate and Present Dr. Whelan's Testimony**

Smith claims that counsel was ineffective at sentencing in failing to adequately investigate Smith's background, which might have contained mitigating evidence, and in failing to call Dr. Whelan as an expert witness to present this mitigating evidence. Specifically, Smith claims that Dr. Whelan's testimony would have supported claims concerning Smith's history, character, or mental condition during sentencing and called attention to the fact that Smith "could not seek any treatment for his mental condition in prison." (Pet. at 34.) Smith complains that his Due Process rights were violated and that if counsel had properly investigated his background and called Dr. Whelan as a witness, there is a reasonable probability that Smith's sentence would have been different.

The Supreme Court of Virginia, upon consideration of the habeas petition, determined:

The record, including the trial transcript, demonstrates that petitioner called Dr. Whalen during his case-in-chief. Petitioner fails to identify what additional testimony Dr. Whelan would have offered at sentencing and fails to proffer an affidavit from Dr. Whelan concerning such testimony. Thus, petitioner has failed to

29

demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Slip op. at 10.)

The court agrees with the Supreme Court of Virginia's determination. Smith contends that a proper investigation on the part of defense counsel prior to sentencing and Dr. Whelan's testimony at sentencing would have provided mitigating evidence resulting in a reduced sentenced. However, Smith fails to even allege what defense counsel's investigation would have revealed, what Dr. Whelan would have offered as testimony, or how such evidence would have affected Smith's sentence. Smith merely points to "a range of mitigation leads such as family members, school, mental, and jail records." (Pet. at 34.) Moreover, Smith fails to provide the court with any information as to his alleged "mental condition" from which he suffers. (Pet. at 34.) Accordingly, the court cannot find that counsel provided ineffective assistance by failing to investigate unknown factors and in failing to call Dr. Whelan as a witness at sentencing or that the result of the sentencing would have been different had counsel taken those actions. Accordingly, the Supreme Court of Virginia's disposition of Smith's claims was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of facts. Therefore, the court will grant the motion to dismiss as to this claim.

**(3) Appellate Claim: <u>Anders</u> Brief**

Smith finally claims that counsel was ineffective in that she filed a petition pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), on appeal. Smith complains that this forced him to supplement the petition on his own without any knowledge of the appellate process. Smith contends

30

that counsel admitted that there were errors at trial and that by not submitting these errors on appeal, she provided ineffective assistance. Smith alleges that, had counsel filed a proper brief raising issues on appeal, there is a reasonable probability that the Supreme Court of Virginia would have reversed the jury verdict.

> The Supreme Court of Virginia, upon consideration of the habeas petition, determined:

> The selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Moreover, the record, including the order issued by the Court of Appeals and this Court, demonstrates that counsel filed a petition for appeal pursuant to Anders v. California, 386 U.S. 738 (1967), and that petitioner was permitted to file supplemental briefing, pro se, and that petitioner's appeal was wholly frivolous. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Slip op. at 10-11.)

The court agrees that Smith's claim lacks merit and must be dismissed. If a notice of appeal is filed, an attorney "has yet other duties owing to his client." United States v. Poindexter, 492 F.3d 263, 271 (4th Cir. 2007). These duties include examining the trial record and identifying and weighing potential issues for appeal. Id. If the appropriate review reveals a meritorious issue for appeal, the attorney is ethically required to prepare a brief on the merits and argue the appeal. Id. If the appropriate review reveals only frivolous issues, the attorney can file a brief in accordance with Anders v. California, 386 U.S. 738 (1967). Id. Anders outlines the circumstances under which an appellate court may grant appointed counsel's motion to withdraw from representation of a defendant who desires to appeal. Anders requires that: (1) appointed counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that

31

arguably could support an appeal; (2) a copy of that brief be furnished to the defendant; and (3) after providing the defendant with an opportunity to respond, the appellate court must conduct an independent and complete examination of the proceedings to determine if further review is merited. Id. (citing Anders, 386 U.S. at 744).

The record reflects that defense counsel properly filed a motion to withdraw, pursuant to Anders, "accompanied by a brief referring to the part of the record that might arguably support Smith's appeal." (Resp't Mot. Dismiss, Ex. 4 at 1.) It appears that defense counsel raised the issues of inconsistent verdicts and credibility of the witnesses and that a copy of the brief was furnished to Smith within the appropriate time period. The Court of Appeals reviewed counsel's brief and Smith's pro se supplemental petition for appeal and ultimately determined that the claims were frivolous. This court finds that Smith's constitutional rights do not include the right to bring a frivolous appeal and, concomitantly, do not include the right to counsel for bringing a frivolous appeal. See Smith v. Robbins, 528 U.S. 259, 278 (2000). Counsel has no obligation to raise meritless arguments on a client's behalf. See Strickland, 466 U.S. at 687-88. Therefore, as the record reflects that Smith's counsel and the state appellate court in this case followed the procedure outlined in Anders, Smith has no viable ineffective assistance of counsel or other constitutional claims. Accordingly, the Supreme Court of Virginia's disposition of Smith's claim concerning counsel's filing of an Anders brief was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of facts. Therefore, the court will grant the motion to dismiss as to this claim.

32

## V. Conclusion

The court finds that Smith cannot demonstrate that the Supreme Court of Virginia's rejection of his claims was contrary to clearly established principles, involved an objectively unreasonable application of Strickland, or was based on an unreasonable determination of the facts. The Supreme Court of Virginia reasonably applied the proper standards of review, and its ruling, which is consistent with the evidence contained in the record, is entitled to deference under § 2254. Accordingly, the court finds that Smith is not entitled to § 2254 relief. Respondent's motion to dismiss will be granted and an appropriate Order issued this day.

The court further notes that a habeas petitioner is "entitled to an evidentiary hearing only to resolve disputed issues of material fact," and therefore, will not warrant a hearing unless he first presents "a colorable claim to relief by showing that the alleged additional facts, if true, would at least arguably compel the granting of the writ." Poyner v. Murray, 964 F.2d 1404, 1422 (4th Cir. 1992). Therefore, as this court has already determined that Smith fails to present any colorable claims, his motion for an evidentiary hearing will be denied.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to petitioner and counsel of record for respondent.

ENTER: This 6th day of February, 2008.

_James C. Turk_

Senior United States District Judge

33